**Nos. 23-3582, 23-3613**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

### CELESTIA CHAPMAN,

Plaintiff, Appellant, and Cross-Appellee,

v.

### BRENTLINGER ENTERPRISES,

Defendant, Appellee, and Cross-Appellant.

---

On Appeal from the United States District Court
for the Southern District of Ohio, Eastern Division,
Case No. 2:20-cv-05009

---

### REPLY BRIEF OF DEFENDANT APPELLEE AND CROSS-APPELLANT
### BRENTLINGER ENTERPRISES

---

Marion H. Little, Jr. (0042679)
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 South High Street
Columbus, Ohio 43215
(614) 365-9900
(Fax) (614) 365-7900
little@litohio.com
*Attorneys for Defendant, Appellee and*
*Cross-Appellant Brentlinger Enterprises*

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ......................................................................... iii

SUMMARY OF THE ARGUMENT ........................................................1

STATEMENT OF THE CASE....................................................................3

    A.    MAG Hires Plaintiff While Emphasizing The Importance Of Its Attendance, Absence, And Leave Policies ......................................3

    B.    Plaintiff Fails To Communicate And Give Notice Of Her Absences, Which Have Nothing To Do With Caring For Her Sister ................................................................................................4

    C.    MAG Permits Plaintiff Time Off To Be With Sharon "Continuously," But Plaintiff Spends Days At A Time Not Caring For Her Sister ...........................................................................6

    D.    MAG Permits Plaintiff Discretionary Leave And Plaintiff's Communication Problems Continue ......................................................7

    E.    MAG Consults With Its Counsel In Good Faith In Determining That Plaintiff Was Not And Is Not Entitled To FMLA Leave ............................................................................................8

    F.    MAG Allows Plaintiff To Dictate Her Own Reduced-Hours, Modified Schedule. Yet Plaintiff Still Fails To Show Up Or Give Advance Notice Of Her Absence...................................................9

    G.    Plaintiff Is Enrolled In Health Insurance Coverage On July 1, 2019, And Disenrolled On The Same Date .........................................10

    H.    Post-Termination Events ...................................................................12

        1.    MAG Reiterates Its Invitation For Plaintiff To Reapply ..........12

**PAGE**

      2.      Plaintiff Secures Able Counsel And Threatens To Sue MAG ........................................................................13

      3.      MAG Makes An Unconditional Return To Work Offer. Plaintiff Rejects It ....................................................13

      4.      Plaintiff Incurs No Out-Of-Pocket Medical Expenses .............13

      5.      MAG Provides Plaintiff With Notice Of Her COBRA Rights ........................................................................14

    I.      District Court Proceedings ..................................................14

ARGUMENT .....................................................................................16

    A.      The District Court Abused Its Discretion In Awarding Plaintiff $85 A Day In Statutory Penalties ...........................................16

      1.      The District Court Improperly Relied On New Arguments And Evidence Plaintiff Submitted For the First Time In Her Reply Brief, To Which MAG Had No Opportunity To Respond....................................................16

      2.      The District Court Failed To Consider The Record As A Whole ..................................................................21

    B.      Under A Proper Review Of The Whole Record, Plaintiff Failed To Demonstrate Bad Faith Or Prejudice ..................................24

CONCLUSION ...................................................................................25

CERTIFICATE OF COMPLIANCE ....................................................26

CERTIFICATE OF SERVICE ..............................................................27

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                    <u>Page(s)</u>

<u>Abatie v. Alta Health & Life Ins. Co.</u>, 458 F.3d 955 (9th Cir. 2006)......................21

<u>Allen Calculators v. Nat'l Cash Reg. Co.</u>, 322 U.S. 137 (1944)..............................21

<u>Alston v. Forsyth</u>, 379 F. App'x 126 (3d Cir. 2010) .................................................20

<u>Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.</u>, 793 F. App'x 896
(11th Cir. 2019) .......................................................................................................18

<u>Bartling v. Fruehauf Corp.</u>, 29 F.3d 1062 (6th Cir.1994) .......................................24

<u>Beaird v. Seagate Tech., Inc.</u>, 145 F.3d 1159 (10th Cir. 1998) ...............................18

<u>Bisig v. Time Warner Cable, Inc.</u>, 940 F.3d 205 (6th Cir. 2019) ............................16

<u>Black v. TIC Inv. Corp.</u>, 900 F.2d 112 (7th Cir. 1990) ...........................................18

<u>Bormuth v. Cnty. of Jackson</u>, 870 F.3d 494 (6th Cir. 2017) ...................................19

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) .......................................................17

<u>Chenoweth v. Wal-Mart Stores, Inc.</u>, 159 F. Supp. 2d 1032
(S.D. Ohio 2001).....................................................................................................23

<u>Ciaramitaro v. Unum Life Ins. Co. of Am.</u>, 628 F. App'x 410
(6th Cir. 2015) ....................................................................................................2, 24

<u>Cultrona v. Nationwide Life Ins. Co.</u>, 748 F.3d 698 (6th Cir. 2014)......................21

<u>Daniel v. Eaton Corp.</u>, 839 F.2d 263 (6th Cir. 1988) ..............................................23

<u>Dies v. Provident Life & Acc. Ins. Co.</u>, 2006 WL 208878
(M.D. Tenn. Jan. 25, 2006) ....................................................................................23

<u>Eng'g & Mfg. Servs., LLC v. Ashton</u>, 387 F. App'x 575
(6th Cir. 2010) ...............................................................................................1, 16, 18

**Cases**                                                       **Page(s)**

Evans v. Books-A-Million, 762 F.3d 1288 (11th Cir. 2014)....................................24

Gomez v. St. Vincent Health, Inc., 649 F.3d 583 (7th Cir. 2011) ...........................25

Guest-Marcotte v. Life Ins. Co. of N. Am., 768 F. App'x 357
(6th Cir. 2019) ............................................................................................16

Haight v. Comm'r of Soc. Sec., No. 22-1364, 2023 WL 34670423
(6th Cir. Jan. 18, 2023)................................................................................21

Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 555 U.S. 285
(2009) ........................................................................................................23

McGowan v. NJR Serv. Corp., 423 F.3d 241 (3d Cir. 2005) ..................................23

Provenz v. Miller, 102 F.3d 1478 (9th Cir. 1996) ..................................................18

Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580
(1st Cir. 1993) ............................................................................................24

Ross v. Choice Hotels Int'l, Inc., 882 F. Supp. 2d 951 (S.D. Ohio 2012)...............20

Seay v. Tennessee Valley Auth., 339 F.3d 454 (6th Cir. 2003)..........1, 16, 17, 18, 20

Washington v. Lenzy Fam. Inst., Inc., 2023 WL 6879788 (N.D. Ohio
Oct. 18, 2023)............................................................................................19

**Federal Statutes**                                                   **Page(s)**

29 U.S.C. § 1132(c) ..................................................................................1, 2, 15, 21

## SUMMARY OF THE ARGUMENT

The district court abused its discretion in awarding Plaintiff penalties of $85 per day pursuant to 29 U.S.C. § 1132(c).

*First*, it abused its discretion by improperly applying the law.  In her motion for partial summary judgment, Plaintiff failed to argue or present any evidence that she suffered prejudice as a result of receiving untimely COBRA notice.  Once MAG drew attention to this defect, Plaintiff submitted a reply brief asserting a new argument – that she had suffered prejudice because she "delayed" seeking medical care – supported by new evidence – a terse, 3-paragraph declaration filed for the first time with her reply.  Although MAG had no opportunity to respond to this evidence, the district court erroneously treated it as determinative in its decision to award Plaintiff penalties of $85 per day.  On these facts, Plaintiff's "presentation of new arguments and new evidence in [her] reply brief violated [MAG's] right under Fed.R.Civ.P. 56(c) to notice and a reasonable opportunity to respond."  Eng'g & Mfg. Servs., LLC v. Ashton, 387 F. App'x 575, 583 (6th Cir. 2010); see also Seay v. Tennessee Valley Auth., 339 F.3d 454, 481–82 (6th Cir. 2003).

*Second*, in failing to consider the record evidence in its entirety, the district court overlooked, and thus discounted, evidence of MAG's good faith throughout Plaintiff's employment, including as to its COBRA obligations.  Above and beyond affording Plaintiff a month of discretionary leave, allowing her to choose when she

1

would return to work, and to dictate her own modified, reduced-hours schedule, MAG repeatedly invited her to reapply following her termination, including in an unconditional offer of reemployment in the same position for the same salary and benefits.  Furthermore, because Plaintiff was enrolled in MAG's health insurance plan and disenrolled effective the same day, MAG acted on its reasonable, good faith belief that she "was not on our plan at the time of her termination," and therefore not entitled to COBRA notice.  [Betsacon 30(b)(6) Tr., R-48,  PgID#330.]  If she was, MAG believed that the service it relied on to handle COBRA obligations would automatically generate and send any required notice.

_Third_, it is undisputed that MAG did not act in bad faith and, after discounting the newly-manufactured evidence and arguments that Plaintiff submitted for the first time with her reply, there is no evidence of any prejudice to Plaintiff as a result of the late notice.  Complete denial of any statutory penalties is appropriate under these circumstances, Ciaramitaro v. Unum Life Ins. Co. of Am., 628 F. App'x 410, 417–18 (6th Cir. 2015), and the district court's decision, by contrast, to award Plaintiff nearly the maximum amount of daily penalties available under 29 U.S.C. § 1132(c) was an abuse of discretion.

2

## STATEMENT OF THE CASE

### A.    MAG Hires Plaintiff While Emphasizing The Importance Of Its Attendance, Absence, And Leave Policies.

Plaintiff's customer-facing position required reliable in-person attendance. [Exh. E to MAG's MSJ, Betsacon Tr., R-55-5, PgID#1606-08; Exh. BBB to MAG's MSJ, Job Description, R-55-54, PgID#2076.] Plaintiff was aware of MAG's requirements. On her first day of work, May 21, 2018, she signed paperwork informing her that finance managers must "Report promptly to work at the assigned time" and "Absences must be approved in advance." [Exh. M to MAG's MSJ, Offer, R-55-13, PgID#1758.][1]

MAG's Handbook likewise put Plaintiff on notice that staying in contact was an important aspect of taking FMLA leave. An employee on leave is "required to contact [her] manager on a prescheduled basis to report on the status of the medical condition … and [her] intention to return to work" and to provide notice if her return-to-work date is "modified in any manner." [Exh. K to MAG's Response, Handbook, R-61-12, PgID#3462.] Employees who "fail to contact [their] manager on a prescheduled basis" or "fail to return to work" at the end of leave may face "[d]isciplinary action, up to and including termination." [Id.]

---

[1]     Before MAG provided Plaintiff with a modified, reduced-hours schedule over own choosing, Plaintiff's full-time schedule was Monday through Thursday from 9:00 a.m. to 7:00 p.m., and Saturdays from 9:00 a.m. to 6:00 p.m. [Exh. QQQ to MAG's MSJ, Betsacon Aff., R-55-69, PgID#2441.]

Relevant for MAG's cross-appeal, the policy also expressly warns that "[a]ny employee taking leave pursuant to this policy who wishes to retain his or her group insurance coverage ***must pay his or her share of the premium contributions during the period of unpaid leave***." [Id. at PgID#3460 (emphasis added).] Employees who fail to pay their share of the premium risk losing coverage. [Id.]

Although Plaintiff began her employment at MAG in 2018, ***she did not enroll in MAG's health insurance plan that year***. [Compl., R-1, PgID#11.]

### B. Plaintiff Fails To Communicate And Give Notice Of Her Absences, Which Have Nothing To Do With Caring For Her Sister.

Knowing and complying with MAG's absence and leave policies should have been important to Plaintiff. She alleges that she took the job at MAG (in Ohio) to be closer to her sister Sharon who had been diagnosed with cancer. [Compl., R-1, PgID#5; Exh. C to MAG's MSJ, Chapman Tr., R-55-3, PgID#1509.] Sharon though, never lived in Ohio, but instead resided in Louisville, Kentucky. [Exh. G to MAG's MSJ, Buford Tr., R-55-7, PgID#1638.] Plaintiff never lived in Ohio either.[2]

When Plaintiff started having attendance issues, however, her failures to report to work and timely communicate with her supervisor, Karen Betsacon, had nothing to do with caring for her sister Sharon:

---

[2]    Although MAG paid Plaintiff relocation expenses, she opted to stay at an extended-stay hotel in Dublin, Ohio, rather than relocating from her "permanent address" in West Virginia, where she kept most of her belongings. [Chapman Tr., R-55-3, PgID#1504-08, 1534-35.]

- <u>June 11, 2019</u> – At 8:59 a.m., Plaintiff texted another of her supervisors, Shane Self, to say she would be in "late" because she had a doctor's appointment. Later, after 5:00 p.m., Plaintiff admitted that she did not come into work at all, and would not be in on time tomorrow either, since she "actually" could not see anyone until 9:45 the next day. [Exh. O to MAG's MSJ, R-55-15, PgID#1760-63.]

- <u>June 12, 2019</u> – Plaintiff reports to work five hours after her usual start time. In an 11:48 a.m. text message, Betsacon asked Plaintiff to "please let me know your treatment schedule" – *i.e.*, Plaintiff's treatment schedule for her own medical care. [Exh. P to MAG's MSJ, R-55-16, PgID#1764.]

- <u>June 17, 2019</u> – Only four minutes before her start time, Plaintiff texts Betsacon to say that she would be in late due to an "appointment." [Exh. Q to MAG's MSJ R-55-17, PgID#1765.]

- <u>June 18, 2019</u> – At 9:50 a.m., nearly an hour after her start time, Plaintiff texts Betsacon that she is "not going to make it in today." Betsacon requests she provide an hour's advance notice in the future: "***Going forward, you should let me know earlier when – at least an hour before your shift so we can start making arrangements for coverage***." Plaintiff pledges that "[she] will." [Exh. T to MAG's Response, R-61-21, PgID#3517 (emphasis added).]

When Plaintiff did not show up or (bother to tell anyone that she was not going to show up) MAG's remaining finance managers had to pick up her slack. [Betsacon Tr., R-61-6, PgID#3356.]  They struggled to do so.  Multiple times, they text messaged Plaintiff for help; to see if she could "punch contracts" for the day, to figure out her username and password, and to "find out how long we need to shift finance managers around" to cover for her.  [Exh. R to MAG's MSJ, R-55-18, PgID#1766-67; Exh. DD to MAG's MSJ, R-55-30, PgID#1788-89; Exh. W to MAG's MSJ, R-55-23, PgID#1780.]

5

**C.    MAG Permits Plaintiff Time Off To Be With Sharon "Continuously," But Plaintiff Spends Days At A Time Not Caring For Her Sister.**

MAG let Plaintiff leave work early on ___**June 20, 2019**___ – what would become her last day of work – because she reported to MAG that she had to care for her sister who was "really bad."  [Exh. X to MAG's Response, Text Message, R-61-25, PgID#3528.]

Plaintiff claims her daughter called her and said that Sharon was "far too sick" for Plaintiff's daughter to handle.  [Exh. 1 to Pl's Response, Chapman Decl., R-60-1, PgID#2966-67.]   Plaintiff attested that "at that point, [she] needed to be continuously in Louisville with Sharon."  [Id. at PgID#2967.]

But Plaintiff wasn't.  Instead of going to Louisville, Plaintiff's debit card charges show that she traveled to Barboursville, West Virginia, where she made a number of purchases on  June 21, 2019.  [Exh. C to MAG's Response, Chapman Tr. R-61-4, PgID#3355.]  On June 24, 2019, Plaintiff made another purchase at a Panera Bread in Dublin, Ohio – ___**where MAG is located**___ – and where Plaintiff admitted she was present at the time of purchase.  [Id. at PgID#3335-38.]

Once she finally made it Louisville, Plaintiff did not remain "continuously" with Sharon either.  Even though it is undisputed that Plaintiff did not work at all in July, 2019, Plaintiff's other sister Alecia Buford – who was present to care for Sharon on and off between July 1, 2019 and Sharon's death on July 19 – testified

6

that Plaintiff "ha[d] to leave to go back to work" because, as Plaintiff falsely told Alecia, "they [*i.e.*, MAG] won't let me stay here." [Buford Tr., R-61-8, PgID#3384-88; see also id. at PgID#3389 (testifying that, "during that three-week period, when I was there, [Plaintiff] was going to work").]

Plaintiff's text messages corroborate Alecia's testimony. On July 6, 2019, for example, Plaintiff texted Alecia to let her know "I'm coming back tomorrow after I get a shower" – indicating that she was not present to care for Sharon that day. [Exh. XX to MAG's Response, Buford Text Messages, R-61-81, PgID#4246-48.] During a text exchange the next day, Plaintiff notes that she is driving and Alecia asks, "Are you back [yet]?" [Id.]

### D.    MAG Permits Plaintiff Discretionary Leave And Plaintiff's Communication Problems Continue.

MAG allowed Plaintiff to use her remaining vacation days to cover her leave, which ran out on June 25. As of June 26, 2019, she began a period of ___***unpaid leave***___ at MAG's discretion. [Betsacon Aff., R-55-69, PgID#2443.] Meanwhile, however, Plaintiff's communication with MAG did not improve:

- June 22, 2019 – Plaintiff was expected to return for work this day, but she did not. Roughly five hours after her start time, Plaintiff texted Betsacon to inform her that Plaintiff will not be into work. Betsacon responds, "I'm very sorry about you[r] sister and will keep you both in my prayers." She asks Plaintiff again to "___***Please just keep me posted***___." [Exh. Y & Z to MAG's MSJ, R-55-24, PgID#1718, R-55-26, PgID#1783 (emphasis added).]

- June 24, 2019 – On the same day that debit card charges placed her in Dublin, Ohio, Plaintiff texted Betsacon about twenty minutes before her scheduled

start time, representing that she was "still in Louisville." [Exh. Y to MAG's Response, R-61-26, PgID#3529.]

- June 25, 2019 – After having not heard from Plaintiff, who should have been at work at 9:00 a.m., Betsacon texted her at 10:01 a.m.  She acknowledged "this is a very difficult time," but, reiterated, "***Please let me know how long you expect to be out so we can make the appropriate arrangements in your absence . . . It is important that you communicate with me regarding your time out of the office.***" [Exh. AA to MAG's MSJ R-55-27, PgID#1788 (emphasis added).]  Hours later, Plaintiff responded, explaining that she has "called family to come help" and again pledged "I will stay in contact daily." [Exh. AA & BB to MAG's MSJ R-55-27, PgID#1784, R-55-28, PgID#1785.]

But she didn't.  Plaintiff did not contact Betsacon again until Monday, July 1.

[Exh. EE to MAG's MSJ, Text Message, R-55-31, PgID#1790.]

### E.    MAG Consults With Its Counsel In Good Faith In Determining That Plaintiff Was Not And Is Not Entitled To FMLA Leave.

After Plaintiff requested further "temporary leave," and to "work[] out a [different] schedule" during her sister's illness, she and Betsacon had a conversation about FMLA leave on July 8, 2019. [Exh. FF to MAG's Response, R-61-33, PgID#3539.]  Betsacon informed Plaintiff that care for siblings was not covered under FMLA.  [Betsacon Tr., R-55-5, PgID#1611.]  On Thursday, July 11, Plaintiff texted Betsacon providing FMLA information her sister Aliecia had received from Alecia's employer, Bank of America.  She claimed that the document "show[ed] under the FMLA that siblings are covered," and said that she would email it to Betsacon.  [Exh. HH to MAG's MSJ, R-55-34, PgID#1795-98.]  Betsacon replied that she would submit the document to MAG's attorney and get back to Plaintiff.

[Exh. II to MAG's MSJ, Text Message, R-55-35, PgID#1799-1800.]  Later that evening, Betsacon emailed Plaintiff confirming that counsel had reviewed the information and that MAG's position was unchanged: siblings were not covered. [Exh. JJ to MAG's MSJ, Email, R-55-36, PgID#1801.]

### F.    MAG Allows Plaintiff To Dictate Her Own Reduced-Hours, Modified Schedule. Yet Plaintiff Still Fails To Show Up Or Give Advance Notice Of Her Absence.

Nevertheless, MAG agreed to accommodate Plaintiff's request for a different schedule – one Plaintiff herself set.  On July 11, Plaintiff told Betsacon that "We have worked coverage out so that I can come [to work] Wed through Sat," while keeping her usual 9:00 a.m. to 7:00 p.m. hours.   [Text Message, R-55-35, PgID#1799-1800; Exh. D to MAG's MSJ, Chapman Tr., R-55-4, PgID#1571.] Betsacon agreed to the schedule and added that Plaintiff and her family "are in our thoughts and prayers."  [Text Message, R-55-35, PgID#1799-1800.]

Plaintiff's first day was supposed to be Wednesday, July 17, 2019 – nearly a month after her last day of work, June 20, 2019.  [Betsacon Tr., 55-5, PgID#1618.] But Plaintiff did not show up for work at 9:00 a.m.  Nor did she notify Betsacon in advance that she would be absent or late.  After not hearing from Plaintiff "on the very first day," the day "[s]he picked" to return to work, Betsacon "had to reach out to her again" by calling her.  [Id. at PgID#1616-17.]  Plaintiff responded by text at 9:21 a.m., telling Betsacon, "My sister's [Alecia's] flight was delayed. Sharon is

losing functions. I can't leave until my other sister gets here." [Exh. LL to MAG's MSJ, R-55-38, PgID#1804-06.]

Plaintiff has spun multiple stories about what happened that morning,[3] but even according to her own account, it is undisputed that: (1) she did not report to work at 9:00 a.m. on July 17, 2019, as required; and (2) she did not provide Betsacon with advance notice of her absence as required. [Exh. F to MAG's Reply, Chapman Tr., R-69-6, PgID#5411-12; Chapman Decl., R-60-1, PgID#2971.]

Because Plaintiff could not comply with the modified, reduced-hours schedule that MAG afforded to her in its discretion, Betsacon notified Plaintiff that she was being terminated.  [Text Message, R-55-38, PgID#1804-06.]  In the same message, Betsacon added that "[w]e wish you the best and ***hope that when you are able to commit to a full time position; you will reach out to us***," and further relayed MAG's sympathies for Plaintiff's sister.  [Id. (emphasis added).]

### G.    Plaintiff Is Enrolled In Health Insurance Coverage On July 1, 2019, And Disenrolled On The Same Date.

As noted, Plaintiff had not engaged in MAG's health insurance plan.  She did, however, complete the necessary enrollment forms in 2019 and Betsacon enrolled Plaintiff in MAG's health insurance plan, effective July 1, 2019.  [Betsacon 30(b)(6) Dep. Tr., R-48, PgID#325.]  Employees generally pay their share of premiums

---

[3]    [See MAG's initial brief at 16-18 (R-26, Pages 29-31).]

through MAG's payroll deduction.  [Exh. ZZZ to MAG's Reply, Betsacon 30(b)(6) Tr., R-61-79, PgID#4225.]  In Plaintiff's case, the deduction would have been made for her first month's enrollment (effective July 1, 2019) from the pay she would have received in her August 5, 2019 monthly paycheck.  [Betsacon 30(b)(6) Dep. Tr., R-48, PgID#323-26.]  But because she did not earn any money in July, and was terminated on July 17, MAG never made a payroll deduction and Plaintiff never paid her premium.  [Id. at PgID#326-30.]

Given the timing of her termination, Betsacon submitted paperwork to MAG's insurer both enrolling Plaintiff, and disenrolling her within two back-to-back billing periods.  [Id. at PgID#326-27 ("[Plaintiff] was not set up on health insurance at that point because we had not been billed until after … her termination."); Exh. UUU to MAG's Response, Insurance Invoices, R-61-74, PgID#4197-208 (noting that Plaintiff's enrollment was "add[ed] 07/01/2019" and "cancel[ed] 07/01/2019").]  This, to Betsacon's understanding, was the appropriate action to take, and it meant that Plaintiff "***was not on our plan at the time of her termination***."  [Betsacon 30(b)(6) Tr., R-48,  PgID#330 (emphasis added).]  Betsacon further believed that if any COBRA notice was required, MAG's "service [provider] that handles our COBRA" would have provided it.  [Id. at PgID#319-21.]  "***When we terminate an employee in the system and they have benefits, the COBRA [notice] is automatically generated***."  [Id. at PgID#321 (emphasis added).]

11

As a result, Plaintiff was disenrolled retroactively effective July 1, 2019 – the same date that would have started her coverage had she otherwise paid her premium. [Insurance Invoices, R-61-74, PgID#4197-208.]  And MAG's insurer never billed MAG for her coverage.  [Betsacon 30(b)(6) Dep. Tr., R-48, PgID#330.]

### H.    Post-Termination Events.

#### 1.    MAG Reiterates Its Invitation For Plaintiff To Reapply.

In addition to encouraging Plaintiff to reapply to MAG during their July 17, 2019 text exchange, Betsacon reiterated the point *twice* more in an email exchange with Plaintiff on July 26, and a phone call on July 30.  [Exh. A, to MAG's MSJ, Betsacon Decl., R-55-1, PgID#1491 (recalling July 30, 2019 phone call with Plaintiff wherein Betsacon "encouraged her to reapply"); Exh. PP to MAG's MSJ, Email, R-55-42, PgID#1819.]  Internal dialogue within MAG revolved around the same subject.  Recalling her discussions with MAG's owner, Mark Brentlinger, Betsacon explained "it was always about having [Plaintiff] come back … MAG was not happy to see her go, not at all, for many reasons."  [Betsacon Tr., R-49, PgID#600; Self Tr., R-61-7, PgID#3373 (Self noting that "[f]inance managers are few and far between.  She wasn't a perfect employee, but [MAG marked Plaintiff as re-hirable because] she was an asset to the company.")]

Brentlinger himself personally contacted Plaintiff and "asked her to come back to work." [Exh. J to MAG's MSJ, R-55-10, PgID#1669.] Plaintiff testified that she "didn't entertain the idea." [Chapman Tr., R-56-4, PgID#2571-72.]

### 2.    Plaintiff Secures Able Counsel And Threatens To Sue MAG.

Within weeks of her termination, Plaintiff had secured knowledgeable employment law counsel. [Exh. RR to MAG's MSJ, Starling Ltr., R-55-44, PgID#1828-29.] In a letter dated August 8, 2019, Plaintiff's counsel threatened to sue MAG for "FMLA interference and  … retaliation." [Id.] No reference to insurance or COBRA was made.

### 3.    MAG Makes An Unconditional Return To Work Offer. Plaintiff Rejects It.

MAG responded to Plaintiff's threats to sue by letter from its counsel dated September 9, 2019. In the letter, MAG made an "unconditional offer" to Plaintiff "to return to full-time employment at MAG in the same position she held at the time of her termination," with the same pay and benefits package. [Exh. WW to MAG's MSJ, Harris Ltr., R-55-49, PgID#1875-76.] Plaintiff did not respond to this offer, but her counsel declined it. [Chapman Tr. R-55-4, PgID#1587, 1592-93.]

### 4.    Plaintiff Incurs No Out-Of-Pocket Medical Expenses.

Significantly, Plaintiff incurred ***no medical bills*** during the period she lacked insurance. Before her termination, for example, Plaintiff was receiving medical care for a work-related injury which was paid for through Ohio's workers' compensation

13

system.  [Chapman Tr., R-56-5, PgID#2606.]  The workers' compensation system continued to pay for her treatment after her termination.  [Id. at PgID#2606, 2609; Chapman Tr., R-56-4, PgID#2578-79.]  Plaintiff also testified that she received Medicaid coverage through the state of West Virginia in 2020.  [Chapman Tr., R-56-5, PgID#2609.]

### 5.    MAG Provides Plaintiff With Notice Of Her COBRA Rights.

On February 19, 2020, Plaintiff requested that MAG send insurance certificates for its health insurance benefit plans for the years 2018-2019 and 2019-2020 to her attorney's office.  [Exh. RRR to MAG's Response, Feb. 19, 2020 Ltr., R-61-71, PgID#4192.]  MAG provided the requested certificates in response to this request.  [Exh. SSS to MAG's Response, April 6, 2020 Ltr., R-61-72, PgID#4193-94; Exh. CCC to MAG's Response, Ins. Cert., R-61-56, PgID#3825-3906; Exh. DDD to MAG's Response, Ins. Cert., R-61-57, PgID#3907-4061.]

As the district court later found, and Plaintiff does not dispute, these certificates "include[d] a notice of Plaintiff's rights under COBRA."  [Order appealed from, R-72, PgID#5703-04.]

### I.    District Court Proceedings.

In the district court, MAG moved for summary judgment on all of Plaintiff's claims, as well as its affirmative defense for failure to mitigate damages. [MAG's MSJ, R-54, PgID#1448-82.]  Plaintiff, in turn, moved for partial summary judgment

14

on her claims for FMLA interference; COBRA violation; and on MAG's affirmative defense for failure to mitigate damages. [Pl's Partial MSJ, R-53, PgID#1123.]

The District Court largely granted MAG's motion and largely denied Plaintiff's, with the only exception being Plaintiff's COBRA-notice claim. [Order appealed from, R-72, PgID#5685-98.] In considering whether to award statutory penalties under 29 U.S.C. § 1132(c), the court found that Plaintiff had failed to demonstrate that MAG acted in bad faith, but concluded that damages were proper in view of the purportedly "significant[] prejudice" she claimed to have suffered:

> Plaintiff represents that she would have elected COBRA coverage if she had received proper notice and, because she did not have COBRA coverage, she did not have any health insurance until May 2020. During the time without coverage, Plaintiff delayed medical treatment for what turned out to be malignant skin cancer. Thus, Plaintiff has shown prejudice.
>
> …
>
> Balancing the significant prejudice to Plaintiff … the Court finds that statutory damages of $85.00 per day is appropriate.
>
> [Id. at PgID#5702-03.][4]

The only evidence for this conclusion though, was a three-paragraph declaration from Plaintiff – the third she filed in the case – which she submitted with her reply

---

[4]    The court also limited its statutory damages award of $85 per day to a 219-day period, based on its finding that MAG satisfied its COBRA-notice requirements when it produced the insurance certificates to Plaintiff on April 6, 2020. [R-72, PgID#5703-04.]

15

brief, where she argued *for the first time* that the lack of notice caused her prejudice. [Exh. 1 to Pl's Reply, R-68-1, PgID#5257.]  Thus, MAG was given no opportunity to dispute or respond to this evidence, which the district court treated as determinative.

## **ARGUMENT**

### A. **The District Court Abused Its Discretion In Awarding Plaintiff $85 A Day In Statutory Penalties.**

#### 1. **The District Court Improperly Relied On New Arguments And Evidence Plaintiff Submitted For the First Time In Her Reply Brief, To Which MAG Had No Opportunity To Respond.**

"A district court abuses its discretion … when it improperly applies the law." Bisig v. Time Warner Cable, Inc., 940 F.3d 205, 218 (6th Cir. 2019); see also Guest-Marcotte v. Life Ins. Co. of N. Am., 768 F. App'x 357, 361–62 (6th Cir. 2019) (reversing denial of attorney fees under ERISA for abuse of discretion where decision was grounded in legal error).  That is just what happened here.

Under Sixth Circuit case law, Plaintiff's "presentation of new arguments and new evidence in [her] reply brief violated [MAG's] right under Fed.R.Civ.P. 56(c) to notice and a reasonable opportunity to respond."  Eng'g & Mfg. Servs., LLC v. Ashton, 387 F. App'x 575, 583 (6th Cir. 2010).  On point in this regard is this Court's decision Seay v. Tennessee Valley Auth., 339 F.3d 454 (6th Cir. 2003).

16

Like Plaintiff here, the <u>Seay</u> defendant (the TVA) filed a reply in support of its motions for summary judgement "to which it attached additional evidence in the form of declarations[.]" <u>Id.</u> at 480. "The additional evidence was not included with TVA's original motions," but the district court nonetheless relied on it in granting summary judgment in the defendant's favor. <u>Id.</u> at 480–81. This Court held that doing so was improper.

"When new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated, a problem arises with respect to Federal Rule of Civil Procedure 56(c)." <u>Id.</u> at 481. Rule 56 is premised on the understanding that the non-movant will have "notice and a reasonable opportunity to respond to the moving party's summary judgment motion and supporting evidence." <u>Id.</u> <u>see also</u>, <u>e.g.</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986) (a court may grant summary judgment sua sponte "so long as the losing party was on notice that she had to come forward with ***all of her evidence***" (emphasis added)). The same due process concerns "extend … to the situation where the moving party submits in a reply brief new reasons and evidence in support of its motion for summary judgment, and require a district court to allow the nonmoving party an opportunity to respond." <u>Seay</u>, 339 F.3d at 481–82. "This is particularly true when the district court relies on the new evidentiary submissions." <u>Id.</u> (footnote omitted).

17

Circuit courts across the country – some of which have expressly relied on Seay – have reached the same conclusion.  See Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc., 793 F. App'x 896, 901 (11th Cir. 2019) ("[W]e agree with our sister circuits that '[w]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the movant an opportunity to respond.'" (citing Seay, 339 F.3d at 481–82, among other cases)); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996); Black v. TIC Inv. Corp., 900 F.2d 112, 116 (7th Cir. 1990).  At bottom, "when a moving party advances in a reply new reasons and evidence in support of its motion for summary judgment," a district court cannot rely on that evidence in granting its motion until and unless "the nonmoving party [is] granted an opportunity to respond."  Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1164 (10th Cir. 1998).

The instant case is on all fours with Seay and Eng'g & Mfg. Servs., (also involving the introduction of new arguments and a new affidavit "submitted for the first time" with a summary-judgment reply brief, see 387 F. App'x at 579-80, 583).

In her motion for partial summary judgment, Plaintiff argued for statutory penalties "of up to $110 a day" with no mention whatsoever of bad faith, prejudice, or any explanation as to how awarding the maximum penalty would "align[] with

the purpose of Section 1132(c)(1)."[5]  [Pl's MSJ, R-53, PgID#1140-41.]  Indeed, the only mention of the word "prejudice" in Plaintiff's motion appeared in the context of Plaintiff's FMLA arguments, not in relation to COBRA.  [Id. at PgID#1139-40.]

But, after MAG pointed out in its response that Plaintiff "did not attempt to satisfy her Rule 56 burden" to show that the maximum penalty was warranted [R-61, PgID#3298], Plaintiff quickly whipped together yet another declaration (her third in this case) to correct for her omission.  In a conclusory three-paragraph declaration unconnected to any document or evidence in the record, Plaintiff claimed for the first time that she had "delayed" seeking medical treatment because she did not receive timely COBRA notice.  [R-68-1, PgID#5257.]

Worse yet, the district court _necessarily must have_ relied on Plaintiff's first-time prejudice argument and last-minute declaration because it was the only evidence in the record of any alleged prejudice at all.  MAG would have no reason to anticipate that it would have done so, however, because: (1) the procedural posture of Plaintiff's motion required the court to review the evidence in a light _most favorable to MAG_ as the non-movant, and not the other way around; and (2) arguments raised for the first time on reply are waived.  See Bormuth v. Cnty. of

---

[5]    See Washington v. Lenzy Fam. Inst., Inc., 2023 WL 6879788, at *3–4 (N.D. Ohio Oct. 18, 2023) ("In determining the proper penalty amount, courts consider many factors, such as the severity of the violation, prejudice to the plaintiff, and whether the proposed penalty aligns with the purpose of Section 1132(c)(1)").

Jackson, 870 F.3d 494, 500 (6th Cir. 2017) ("We have consistently held, however, that arguments made to us for the first time in a reply brief are waived."); see also Ross v. Choice Hotels Int'l, Inc., 882 F. Supp. 2d 951, 958 (S.D. Ohio 2012) ("This Court has explained time and again that 'a reply brief is not the proper place to raise an issue for the first time.'").[6]

"Fundamental fairness demands that [MAG] should have had notice and a meaningful opportunity to respond prior to the award of summary judgment on grounds raised for the first time in [Plaintiff's] reply brief." Alston, 379 F. App'x at 129; Seay, 339 F.3d at 480–82. Because the district court failed to afford MAG that opportunity, it abused its discretion in awarding statutory damages. This Court should vacate its judgment with respect to its award of statutory damages and remand with instructions to enter judgment denying statutory penalties. Alternatively, if the Court orders remand for the district court to reconsider penalties, it should preclude the district court from considering Plaintiff's reply-declaration.

---

[6]    In response to MAG's assertion of this argument in its initial brief on appeal, Plaintiff argues that MAG has waived its challenge to the district court's reliance on her late-manufactured evidence because it did not seek to file a sur-reply. But this is an error by Plaintiff and ultimately the district court. Plaintiff violated the rules with the filing of her cryptic, third declaration, and the court should have ignored it. The lack of a surreply has not prevented this Court or others from correcting similar district court errors. See Seay, 339 F.3d at 482 n.9 (plaintiff's failure to request a sur-reply in the district court "is beside the point"); see also Alston v. Forsyth, 379 F. App'x 126, 128-29 (3d Cir. 2010) (vacating the district court's summary judgment order where it relied on an argument defendant raised for the first time in its reply based on an intervening ruling, even though plaintiff "did not file a sur-reply").

### 2.    The District Court Failed To Consider The Record As A Whole.

While the district court has discretion to determine whether, and to what extent it awards statutory penalties under 29 U.S.C. § 1132(c), "review for abuse of discretion typically requires consideration of the record as a whole." Haight v. Comm'r of Soc. Sec., No. 22-1364, 2023 WL 3467042, at *3 (6th Cir. Jan. 18, 2023); see also Allen Calculators v. Nat'l Cash Reg. Co., 322 U.S. 137, 142 (1944) ("[I]t is not ordinarily possible to determine [whether an abuse of discretion occurred] except in light of the whole record.").  "A straightforward abuse of discretion analysis allows a court to tailor its review to all the circumstances before it." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 968 (9th Cir. 2006); accord: Cultrona v. Nationwide Life Ins. Co., 748 F.3d 698, 707 (6th Cir. 2014) (proper for district court to "consider[] the circumstances surrounding the document request" plaintiff sent to plan administrator before assessing penalties pursuant to § 1132(c)).

Viewing the record in its entirety here, the district court's assessment of $85 per day is an abuse of discretion.  As Betsacon testified, MAG "was very generous and cooperating with [Plaintiff]" from the beginning.  [Betsacon Tr., R-61-6, PgID#3368.]  In addition to giving her multiple chances to comply with its absence and notice procedures, MAG allowed Plaintiff nearly a month of discretionary leave, notwithstanding its counsel's belief that MAG was not required to do so under the FMLA.  MAG also let Plaintiff decide her return-to-work date and dictate modified

reduced-hours schedule of her own choosing, even as other finance managers had difficulty covering for her.

By text message, email, and in multiple phone calls, MAG also repeatedly encouraged Plaintiff to reapply when she was able to commit to a full-time schedule. These requests culminated in a letter from MAG's counsel expressing an "unconditional offer" to Plaintiff to return to full-time employment at MAG in the same position she held at the time of her termination, with the same pay and benefits. Had she accepted the offer, the issue of COBRA notice would be obviated, since MAG could simply reenroll her in its health insurance plan.

Most importantly, the record reflects MAG's good faith belief that, because Plaintiff was not previously enrolled in MAG's health care plan, became enrolled and disenrolled for the first time effective July 1, 2019, and never paid her first month's premium, Plaintiff was not enrolled in the plan as of the date of her termination – thereby negating any COBRA-notice obligations.  [See Betsacon 30(b)(6) Tr., R-48, PgID#328-29 ("[H]er insurance would have termed out on the day she was terminated …  It's not as if somebody had been on the plan and then was terminated.")]  As Betsacon put it, "[s]he was not set up on health insurance at that point" because MAG was never billed for her coverage.  [Id. at PgID#327.]  And even if Betsacon were mistaken, MAG uses a "service that handles [its] COBRA"

which would "automatically generate[]" any required COBRA notice in any event. [Id. at PgID#320-21.]

Since MAG not only lacked bad faith, but consistently demonstrated good faith, the district court's $85-per-day penalty award is excessive to say the least. See, e.g., McGowan v. NJR Serv. Corp., 423 F.3d 241, 250 (3d Cir. 2005) (affirming district court's decision not to impose statutory penalties because the defendant plan administrator acted in good faith believing it had no legal duty to provide the requested information), abrogated on other grounds, Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 555 U.S. 285 (2009); see also Daniel v. Eaton Corp., 839 F.2d 263, 268 (6th Cir. 1988) ("We cannot say that the district court abused its discretion" in awarding only a $25 per-day penalty, where the district court accepted defendant's explanation that its failure to respond to plaintiff's request "was not deliberate, but resulted from neglect or misfeasance"); Chenoweth v. Wal-Mart Stores, Inc., 159 F. Supp. 2d 1032, 1043–44 (S.D. Ohio 2001) (awarding penalties against the employer of only $5 per day where plaintiff offered no evidence of employer bad faith); accord: Dies v. Provident Life & Acc. Ins. Co., 2006 WL 208878, *8–9 (M.D. Tenn. Jan. 25, 2006) (awarding penalties of $25 per day "[r]egardless of whether Plaintiff was actually prejudiced," where the court accepted that the failure to timely produce documents was "not deliberate").

Evidence of bad faith – which is wholly absent here – is ordinarily required to justify a penalty award so close to the statutory maximum. See Evans v. Books-A-Million, 762 F.3d 1288, 1300 (11th Cir. 2014) ("In light of the district court's finding that Books–A–Million intentionally violated COBRA, we hold that the court acted within its discretion in awarding a $75 per day penalty.").

### B. Under A Proper Review Of The Whole Record, Plaintiff Failed To Demonstrate Bad Faith Or Prejudice.

Correcting for the district court's abuse of discretion in relying on new arguments and evidence, the record as a whole discloses a only single COBRA-notice violation which was not done in bad faith and did not result in any prejudice.

"Many courts have refused to impose any penalty at all under § 1132(c)(1)(B) in the absence of a showing of prejudice or bad faith," and the district court's award of $85 per day is an abuse of discretion. See Ciaramitaro v. Unum Life Ins. Co. of Am., 628 F. App'x 410, 417 (6th Cir. 2015) (quoting Bartling v. Fruehauf Corp., 29 F.3d 1062, 1069 (6th Cir.1994)); see also id. at 417–18 (affirming the district court's "decision to deny penalties" altogether where defendant did not act in bad faith and plaintiff "has not pointed to any other pertinent factors" such as prejudice weighing in favor of penalties); Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 588–89 (1st Cir. 1993) (affirming district court's decision to impose no penalties where "there is no evidence that the Plan Administrator acted intentionally or in bad faith" and  plaintiff "failed to show that his rights were prejudiced by the

24

delay"); <u>Gomez v. St. Vincent Health, Inc.</u>, 649 F.3d 583, 591 (7th Cir. 2011) (affirming summary judgment denying statutory penalties where there was no evidence of bad faith by administrator or prejudice to plaintiff).

## <u>CONCLUSION</u>

For these reasons, this Court should vacate the district court's judgment with respect to its award of statutory penalties under COBRA and remand the matter with instructions to enter judgment denying statutory penalties. Alternatively, if the Court orders remand to the district court to reconsider penalties, it should preclude the district court from relying upon the evidence Plaintiff submitted with her reply brief.

Respectfully submitted,

/s/ Marion H. Little, Jr.
Marion H. Little, Jr. (0042679)
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 South High Street
Columbus, Ohio 43215
(614) 365-9900
(Fax) (614) 365-7900
little@litohio.com

*Attorneys for Defendant, Appellee and Cross-Appellant Brentlinger Enterprises*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that the foregoing brief complies with the requirements of Fed. R. App. P. 32(a)(7)(B), in that it contains 6,119 words, exclusive of the portions properly excluded under said rule, according to the word processing program.  This brief was created and formatted using Microsoft Word and is in 14-point, Times New Roman Font.

/s/ Marion H. Little, Jr.
Marion H. Little, Jr. (0042679)

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was served on counsel for the parties via ECF Transmission this 9th day of February, 2024.

/s/ Marion H. Little, Jr.
Marion H. Little, Jr. (0042679)

1021887

27

## DESIGNATION OF DISTRICT COURT DOCUMENTS

| Doc. # | PageID # | Description |
|---|---|---|
| 1 & 1-1 | 5 11 | Plaintiff's Complaint with Exhibit 1 |
| 48 | 319-321 323 324 325 326 327 328 329 330 | Deposition of Defendant Brentlinger Enterprises taken 1/19/2023 |
| 49 | 600 | Deposition of Karen Betsacon taken on 09/21/2022 |
| 54 | 1448-1482 | Defendant's Motion for Summary Judgment |
| 53 | 1123 1140-1141 | Plaintiff's Partial Motion for Summary Judgment |
| 55 & 55-1 55-3 55-3 55-4 55-5 55-7 55-10 55-13 55-15 55-16 55-17 55-18 55-23 55-24 55-26 | 1484 - 2472 | Plaintiff's Partial Motion for Summary Judgment |

| Doc. # | PageID # | Description |
|---|---|---|
| 55-27<br>55-28<br>55-30<br>55-31<br>55-34<br>55-35<br>55-36<br>55-38<br>55-42<br>55-44<br>55-49<br>55-54<br>55-69 | | |
| 56-4<br>56-5 | 2571-2572<br>2578-2579<br>2606<br>2609 | Deposition Transcript of Celestia Chapman Vol. I |
| 60-1 | 2966-2967<br>2971 | Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment |
| 61 &<br>61-4<br>61-6<br>61-7<br>61-8<br>61-10<br>61-12<br>61-15<br>61-21<br>61-25<br>61-26<br>61-33<br>61-56<br>61-57<br>61-71 | 3270-4248 | Defendant's Opposition to Plaintiff's Motion for Summary Judgment |

| Doc. # | PageID # | Description |
|---|---|---|
| 61-72<br>61-74<br>61-79<br>61-81 | | |
| 68-1 | 5257 | Plaintiff's Reply in Support of Motion for Partial Summary Judgment |
| 69-6 | 5411-5412 | Defendant's Reply in Support of Motion for Summary Judgment |
| 72 | 5702-5704<br>5685-5698 | Opinion and Order granting in part and denying in part (Doc. #53) Motion for Partial Summary Judgment; granting in part and denying in part (Doc. #54) Motion for Summary Judgment signed by Judge Michael H. Watson |